CARLOS M. DE CASTRO, Petitioner and Appellant, *v.* BOARD OF COMMISSIONERS OF SAN JUAN, Respondent and Appellee.*

No. 8070. Argued January 17, 1940.—Decided June 28, 1940.

* NOTE.—On appeal to the U. S. Circuit Court of Appeals for the First Circuit this decision was affirmed. *See* 116 F. (2d) 806. Certiorari denied by the U. S. Supreme Court.

150

R. *Rivera Zayas, Damián Monserrat, Jr.,* and *Gabriel de la Haba* for appellant. *J. Valldejuli Rodríguez* and *R. Díaz Collazo* for appellee.

Mr. Justice Wolf delivered the opinion of the court.

Pedro Ramírez Nadal preferred charges against Carlos M. de Castro, City Manager of the Capital, before the Board of Commissioners of the Government of the Capital. On November 10, 1938, the board made the charges its own and impeached the city manager. The city manager was duly notified and answered. A public hearing began on November 21, 1938, and lasted several sessions. On January 5, 1939, the city manager was suspended from office. The hearing continued until February 17th. On April 5 the city manager was removed from office.

Nineteen charges were made against the city manager. They were numbered V to XXIII. The paragraphs from I to IV were devoted to the introductory statements of the charges. Evidence was offered on seven of these. So that the trial was begun nominally on all 19 charges. The manager went to trial, it may be presumed, at the beginning without any specific knowledge of which charges were to be presented. We say this now for various reasons, one of which is that the appellant in this court maintains that none of the charges as referred was the sufficient statement of a charge of removal for just cause. The appellee, on the other hand, maintains that all the charges were sufficiently specific and that the defendant needed no further notice. If any one of the 19 charges was sufficient to justify the removal of the city manager, then great care should have been taken in its composition. If, on the other hand, the charges are to be considered together, it is quite a question whether or not the court below might not have considered the charges together to see whether there was enough in all of them to justify the removal. We had a serious doubt as to whether the principal charge on which the appellee and the court below relied, as to the alleged disastrous condition of the aqueduct of San Juan, was the just cause to which the law refers. We shall revert now to the four charges that were finally presented to the District Court of San Juan.

Charge No. X says:

"On or about November 24, 1937, one José Torres Silva, an employee of the Government of the Capital, when completely intoxicated, fired two revolver shots in the paymaster's office of the Municipal Building while he was on duty and the fact came to be known by the aforesaid Carlos M. de Castro and he took no action in regard to said acts of Mr. Torres Silva."

The Board found:

"WHEREAS it appears from the testimony of the witness presented both on behalf of the prosecution and of the defendant, and especially the statements of the city manager and José Torres Silva, that the imputation contained in the Xth paragraph of the complaint constitutes negligence on the part of the city manager, and that his attitude is far from being the 'good conduct' of which the Organic Act of this Government speaks, and on the contrary, the attitude and words of the city manager in relation to that incident clearly constitutes 'immoral or incorrect conduct' as determined in that law."

Charge No. XII says:

"On or about October 2, 1937, in the matter of an accident suffered by automobile GM201, property of the Capital, caused by the negligence of José Marcos Morales, an employee of the Government of the Capital, as had been decided by the Auditor of the Capital, the aforesaid Carlos M. de Castro, in his position as city manager, required the Auditor of the Capital personally and through the school director, to file away the case, although he knew that such a filing would be illegal and against the interest of the Capital. Said José Marcos Morales was an employee under the direct charge of the aforesaid Carlos M. de Castro in his capacity as city manager.

"In this case Carlos M. de Castro, in his aforesaid capacity and in his office in the City Hall, threatened and tried to frighten said auditor, so that he would compromise said case, all of it against the interests of the Capital."

The Board said:

"WHEREAS it appears from the testimony of witnesses that the conduct of the city manager in the specific incident to which paragraph XII of the List of Charges refers, and which is contained

therein, is in every way not the 'good conduct' determined by the act creating this Government of the Capital, and on the contrary, the actions of the city manager constitute a violation of the duties imposed by the statute on the city manager and are included in the phrase 'immoral or incorrect conduct' determined by the aforesaid act.''

Charge No. XXII says:

''The aforesaid Carlos M. de Castro, in his stated capacity, has not taken the necessary steps to enforce the ordinances of the Government of the Capital, to wit:

''1. Ordinance No. 249, as amended. 2. Ordinance No. 360; 3. Ordinance No. 364; 4. Ordinance No. 367; 5. Ordinance No. 369; 6. Ordinance No. 371; 7. Ordinance No. 380; 8. Ordinance No. 385; 9. Ordinance No. 393; 10. Ordinance No. 394; and various other of the ordinances of the Capital.''

The Board said:

''WHEREAS it has been fully shown by the documentary evidence offered, by the testimony of the secretary of the city manager himself, that he, voluntarily, purposely, systematically and negligently failed to enforce, without any moral or legal excuse, knowingly and ignoring the express orders of this Board, the duties and obligations imposed upon him by Ordinances Nos. 360, 367, 371 of this Board, adopting therefore an attitude contrary to the good conduct prescribed by the Act of the Government of the Capital or incurring in the 'immoral or incorrect conduct' determined by that law.''

Charge No. 6 says:

''The aforesaid Carlos M. de Castro in the discharge of his duties as city manager has not inspected nor managed the aqueduct system of the Capital which supplies water to the Capital and to the municipalities of Bayamón and Cataño and in part to the municipality of Río Piedras, nor does so at present. Said Carlos M. de Castro has allowed and allows in his said capacity, that the equipment of said system, including dams, filter plants, mains, valves and other apparatus should fall into a state of carelessness and disorder. He has allowed and allows the water supplied by said system and consumed by the stated municipalities to be contaminated in such a way that it has menaced and menaces public health and welfare.

"Due to that state of carelessness and disorder, the supply of water has been interrupted at various times and there is the menacing possibility that said supply may be interrupted at any moment.

"Due to such disorder in the management of the water supply system, the Capital is unable to collect and does not collect payment for the water served to many consumers, and Carlos M. de Castro has allowed and allows that many consumers have used and use the water service without paying for said service."

The Board said:

"WHEREAS the documentary evidence offered, not only to support the complaint, but on behalf of the defendant, and the testimony of witnesses and experts offered to support the charge contained in the 6th paragraph of the complaint, including the evidence of the same nature offered by the defendant, show beyond shadow of doubt that the city manager incurred in negligence and adopted an attitude highly prejudicial to the interests of the community of this capital, not paying attention and on the contrary ignoring the repeated observations made to him orally and in writing by the authorities of the Insular Department of Health in relation to the contamination of the water for public consumption; in not paying attention to the repeated observations and requests made to him by various employees of this Government of the Capital itself in that regard, in all thereby showing he has not observed the good conduct to which the law creating the Government of the Capital refers, and incurring in neglect and in 'immoral and incorrect conduct'; and—WHEREAS this Board understand that because of the reasons, statements and facts hereinbefore expressed and recited, there exists just cause for removing the City Manager because of carelessness, inexcusable negligence and immoral and incorrect conduct in the discharge of his office. . . ."

On April 11, 1939, the city manager asked the District Court of San Juan for a writ of certiorari which issued. A hearing was held on June 1, 1939. Judgment was rendered on August 21, 1939, quashing the writ. The defendant of course assigns various errors which we find it unnecessary to discuss in any particular order.

██ In point of fact a large part of the discussion in the court below and in the briefs of the appellant was that section 22 of Act No. 99 of 1931 (Session Laws, pp. 626, 638),

only permitted the presentation of charges for felonies or misdemeanors. It reads in Spanish as follows:

"El Administrador de la Capital podrá ser destituído por la Junta de Comisionados por justa causa, previa audiencia y oportunidad para defenderse por sí o mediante abogados. Serán causas para destituir al Administrador de la Capital: cualquier acto realizado por él que constituya un delito grave (*felony*); cualquier acto realizado por él que constituya un delito menos grave (*misdemeanor*) y que implique depravación moral, abandono, negligencia inexcusable en el desempeño de su cargo, o conducta inmoral e incorrecta en el desempeño del mismo."

As the statute was enacted in Spanish, the Spanish text should prevail. The English text is as follows:

"The city manager may be removed by the Board of Commissioners, for just cause, upon hearing and an opportunity to defend himself either in person or through attorneys. The following shall be causes for the removal of the city manager: Any act of his constituting a felony; any act of his constituting a misdemeanor and implying moral turpitude; or carelessness, inexcusable negligence in the performance of his duties, or immoral or incorrect conduct· in the exercise thereof."

The court below held that besides crimes and misdemeanors the mayor might be impeached for grave negligence in the discharge of his duties. The effect of the court's decision was to follow the literal words of the English text rather than of the Spanish, but we agree that it must have been the intention of the Legislature that grave negligence should also be a cause for removal. This was the way both texts read for the review by certiorari of a subordinate officer's removability under previous acts. In the Spanish text we think the word "*y*" after the word "*misdemeanor*" should be read as "*o*" because any other interpretation of the Act would lead to an absurdity.

These conclusions are borne out by section 21 of Act No. 99 which is as follows:

"The city manager shall be the chief executive of the Capital; he shall be appointed by the Board of Commissioners created by this Act and shall hold office during good conduct."

We need not stress the point too much, because assuming the correctness of our conclusion and that of the court below the case should be reversed on other grounds.

■ The court held that charges X and XII had not been proved. We find no reason to challenge the correctness of this decision, especially as the appellee does not do so.

■ When it came to charges XXII and VI the court held that the evidence was contradictory and that therefore the findings of the board were conclusive. Reliance was placed on the following cases. *Coll* v. *Todd,* 35 P.R.R. 572; *Rivera* v. *Asamblea Municipal,* 39 P.R.R. 71; *Fernández* v. *Pavía,* 42 P.R.R. 740, and *Valldejuli* v. *De Castro,* 52 P.R.R. 275. We may interpose here that we are not at all convinced that the situation created by Act No. 99 for the removal of a city manager is identical or even similar to the right of the head of a department to remove one of his subordinates. However this may be, the fact remains that in all of these cases the reader would have had some idea from the opinion of the essential nature of the charges against the petitioner therein.

■ From the briefs of neither of the parties do we have a clear idea of what the mayor failed to do or what he ought to have done with respect to the aqueduct. It is obvious that the rule for the removal of subordinates should be different because the mayor has a responsibility for his employees. There is no relation of employer and employee between the municipal assembly and the city manager. When a city manager is about to be removed, the municipal assembly ought to make the just cause for which he was to be removed specifically clearer than was done in this case.

■ Charge No. XXII relates to the failure of the city manager to put into force certain ordinances. We shall not attempt to recite them. The court held that the evidence

was contradictory. We have examined the evidence and we do not find that the failure to put into effect some of these ordinances was anything more than perhaps an abuse of discretion or a difference in opinion as to the merits of the ordinances, and were not the just cause to which the statute relates.

█ The really important charge in this case was the one that related to the aqueduct. In our opinion all the other charges were negligible. It may be said, however, that if the charge against the mayor had originally been solely for his conduct in regard to the administration of the aqueduct, he might have come before the municipal assembly better prepared to defend his case. As we have intimated before, we have no idea at the present writing exactly what the mayor should have done that he did not do.

There was a long trial. A number of prominent citizens were assemblymen and took part in the trial of the city manager, but we did not find anything in the record on the part of them to show any great activity with respect to the conduct of the aqueduct. They might be held to share some of the responsibility. We find nothing in the brief of the appellee and practically nothing in the typewritten evidence certified up to us that would specifically indicate to us what the mayor ought to have done under the circumstances of this case. Evidence of what previous mayors had done was, as we read it, excluded when the mayor attempted to offer evidence of that kind. Enough we find to show that when the mayor took charge of the city government the aqueduct was already in a troublesome condition.

From some of the evidence it definitely appeared that if the city of San Juan could have relied alone on the water that came from Guaynabo there would have been no great difficulty. However, the fact remained that the city before the advent of Mr. De Castro had used for a necessary supply the waters that came from Río Piedras. Now this volume of water was to a certain extent contaminated with coli-bacilli.

It sufficiently appeared from the evidence that previous mayors and Dr. De Castro, on the advice of their own engineers, felt bound to use both sources of supply to furnish the city of San Juan with the necessary water. One of the declarations we found in the evidence showed that ships in the Island were not using the water of the aqueduct, but a subsequent bit of testimony was that they were using it at the time of the hearing.

Meanwhile also San Juan was very well supplied with water and no pestilences or other great harm have happened to the population by reason of the condition of its water supply.

During the time that Mr. De Castro was mayor the population of the city of San Juan increased not only by natural growth and flowing from all parts of the Island, but the FRERA, the PRRA and other Federal agencies caused an increase of population as well as an increase of that kind of construction where water would be used in greater volume.

The mayor by his testimony showed that he had become aware of the difficult situation and he was attempting to remedy it. He hoped and tried for greater funds but could not get them. Nevertheless he obtained some and attempted to relieve the demand by an increase of water supply.

We have examined the evidence despite the failure of the appellee to sum it up for us and we can not find or hold that the actions of the mayor, so far as demonstrated to us, with regard to the condition of the aqueduct were the just cause for his removal. The mayor had a responsibility for all the works of the important municipality of San Juan. We are not pretending to say that he could not have done more to improve the condition of the aqueduct, but the appellee has not pointed out the way.

On the theory that the district court could not examine the supposed conflicting evidence because the appellee was the sole judge thereof, the latter says that it should not attempt to discuss the 600 pages of evidence. As we have

said before, the specific charges against the mayor with respect to the aqueduct do not stand out as being the just cause to which the statute refers. Given the strict attitude of the appellant toward the construction of section 22 of Act No. 99, we are not totally surprised that the court should have felt itself bound to take a similar strict attitude with respect to the kind of removals which it had a right to review, namely, infractions of the Constitution, the Organic Act or the laws of Puerto Rico. We, however, think that if there is a strong doubt as to the sufficiency of the charges the law is and should be that a mayor ought not to be removed. To hold otherwise is against the law.

■ While we hold that the mayor might be removed for grave negligence, we feel also bound to hold that the evidence of such grave negligence ought to be somewhat similar to that required for a crime, felony, or a misdemeanor. *Noscitur a sociis.* However, even if the charge with respect to the aqueduct had been a little graver than it appears, given all the precedents with respect to the aqueduct, we do not think standing alone it was a just cause for the removal of the City Manager. This is one of the principal reasons for not agreeing with the court below. We likewise have a serious doubt whether the charges were sufficiently specific and whether the court below did not have a right to say so.

The judgment appealed from must be reversed, and in its stead a new one rendered, annulling Ordinances No. 370 of January 5, 1939, and No. 373, of April 5, 1939, which decreed the suspension and removal of the city manager, and in consequence thereof ordering the reinstatement of the petitioner Carlos M. de Castro in his office of City Manager, said reinstatement to date back from January 5, 1939, when the petitioner was suspended from office and pay.